Eastern District of Kentucky
**F I L E D**

JUN 2 7 2005

AT PIKEVILLE
LESLIE G. WHITMER
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 04-288-GWU

KEVIN C. DANIELS,                                    PLAINTIFF,

VS:                          MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT,

## INTRODUCTION

Kevin Daniels brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB). The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
5.    Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. 404.1521, 416.921.  The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term.  Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985).  The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment,"  Landsaw v. Secretary of Health and Human Services,  803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987).  The plaintiff is said to make out a  prima facie case by proving that she or he is unable to return to this work.  Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

DISCUSSION

The Administrative Law Judge (ALJ) concluded that Daniels, a 55 year-old former coal mine repairman with a high school education, suffered from impairments related to degenerative disc disease and joint disease involving the entire lumbar spine and mild degenerative joint disease of the hip. (Tr. 13-14). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 19). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 19). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 18).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The time period pertinent to this appeal is very important. Daniels alleged

5

a disability onset date of December 31, 1998 on his DIB application. (Tr. 50). The ALJ determined that the plaintiff's DIB-insured status expired on December 31, 2001. (Tr. 18). Therefore, the claimant must prove he became disabled during this three-year time period to qualify for DIB.

The hypothetical question presented to Vocational Expert Anthony Michael included an exertional limitation to light level work along with such non-exertional restrictions as (1) an inability to stand or walk for longer than one-hour at a time; (2) an inability to more than occasionally push and pull or use foot controls with the right lower extremity; (3) an inability to more than occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; (4) an inability to ever climb ladders or ropes; (5) an inability to ever perform repetitive bending, twisting or turning; and (6) a need to avoid exposure to full body vibration. (Tr. 214). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 214-215). Therefore, assuming that the vocational factors considered by Michael fairly depicted the plaintiff's condition during the relevant time period, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly depicted Daniels' condition, as required by Varley. Dr. James Ross (Tr. 129-139) and Dr. Humilidad Anzures (Tr. 140-145), the non-examining medical reviewers, each examined the record and completed Residual Functional Capacity Assessment Forms. The hypothetical question was compatible with these assessments. Each reviewer indicated that the review focused on the time period before the expiration of the plaintiff's DIB-insured status. (Tr. 131, 140). Therefore, these reports provide substantial evidence to support the administrative decision.

The ALJ rejected the opinion of Dr. Mary Hall, a treating physician. (Tr.

6

16).  In October of 2003, almost two years after the expiration of Daniels' DIB-insured status, Dr. Hall identified a number of very severe physical restrictions. (Tr. 161-164).  However, the physician did not clearly "relate back" these limitations to the relevant time period.  Dr. Hall's treatment notes from the pertinent time period are very sparse and do not suggest the existence of a totally disabling condition.  In December of 2001, Dr. Hall noted that the plaintiff was "doing well." (Tr. 113).  In December of 1998, the doctor indicated that the claimant's back was "not bothersome." (Tr. 118).  In contrast, Dr. Ross clearly identified the medical evidence which supported his opinion. (Tr. 129-130).  An ALJ may rely upon the opinion of a non-examiner over an examining source when the non-examiner has clearly stated the reasons for his differing opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Therefore, under these circumstances, the ALJ could properly reject Dr. Hall's opinion.

Dr. James Templin, an examining consultant, also identified a number of very severe physical limitations. (Tr. 155-156).  However, these were issued in December of 2003 and do not clearly "relate back" to the pertinent time frame. Therefore, the ALJ could properly reject this opinion as binding.

Finally, Psychologist Phil Pack, an examining consultant, noted a number of mental limitations in December of 2003. (Tr. 166-167).  Dr. Templin also identified some mental limitations. (Tr. 157).  Neither examiner "related back" these restrictions to the relevant time frame.  The claimant reported that he had never been referred for mental health treatment and stated that he felt his main problem had always been physical rather than mental. (Tr. 195).  Therefore, the ALJ properly concluded that the claimant did not suffer from a "severe" mental problem during the time period relevant to this appeal.

After review of the evidence presented, the undersigned concludes that

7

the administrative decision should be affirmed.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___23___ day of June, 2005.

G. WIX UNTHANK
SENIOR JUDGE

8